**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **JUUL LABS, INC.,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 1:19-cv-00715-LO-IDD** |
| **THE UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE A,** | |
| **Defendants.** | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
AMENDED MOTION FOR ENTRY OF DEFAULT JUDGMENT**

Pursuant to Fed R. Civ. P. 55(b)(2), Plaintiff Juul Labs, Inc. ("Plaintiff" or "JLI") by counsel, submits this Memorandum in Support of its Motion for Default Judgment seeking entry of Judgment against the remaining Defendants in this Action (collectively "Subject Defendants") on all Counts of the First Amended Verified Complaint ("Amended Complaint") pursuant to Fed. R. Civ. P. 55.

**I.      Introduction**

Plaintiff filed a Motion with this Court under Fed. R. Civ. P. 55(b)(2) for a default judgment against Subject Defendants for Trademark Infringement and Counterfeiting, False Designation of Origin, and Trademark Dilution after Defendants unlawfully established eBay internet stores ("Defendant Internet Stores") to offer to sell and sell counterfeit products bearing JLI's registered trademarks without authorization from, and to the substantial detriment of, Plaintiff. This detriment is in the form of lost profits, trademark dilution, and tarnishment, among other harms.

Subject Defendants have been properly served pursuant to Fed. R. Civ. P. 4 and are aware of this action, but nevertheless chose not to respond. Using the discovery obtained from PayPal, Inc., Plaintiff served Subject Defendants either personally or by email as directed by this Court in its Order authorizing service by email on certain defendants. The Subject Defendants did not file a response, and the Clerk has entered default.

By their default, Subject Defendants have conceded the truth of the allegations of the Amended Complaint. There are no issues of fact remaining in this suit, and default should be entered against Subject Defendants providing for permanent injunctive relief as well as an award of statutory damages.

## II.     Background Facts

### A.     Plaintiff

Plaintiff is a pioneer in Electronic Nicotine Delivery Systems (i.e., "ENDS") and related technologies, having spent years and invested millions of dollars to develop and introduce into the market in 2015 its branded, innovative, and breakthrough ENDS product. Amended Complaint ¶ 2. The JUUL-branded system is intended for adult smokers seeking a nicotine alternative to traditional combustible cigarettes. *Id*.

The JUUL Electronic Nicotine Delivery System ("ENDS") has been widely adopted and attained tremendous commercial success and acclaim. Since its launch in 2015, JLI's one-of-a-kind system has enjoyed substantial brand cache and loyalty. However, as is the case with many successful brands, JLI has become aware of significant counterfeiting problems in the United States and around the world, particularly as it relates to the replaceable pods containing nicotine infused liquids ("e-liquid") that are used in JLI's ENDS products. The current JUUL ENDS product is comprised of a main device that houses the electronics of the system, and an

individual pod containing Plaintiff's proprietary e-liquid that is vaporized when the user inhales a puff. Amended Complaint ¶ 15.

JUUL Pods are typically sold in packs of 4; an example of genuine JUUL Pods in their original packaging are shown below:



*Id.* ¶ 16.

Plaintiff uses and owns numerous registered trademarks, for which it also owns common-law trademark rights ("Plaintiff's Trademarks"). Plaintiff's Trademarks have been used exclusively and continuously by Plaintiff and have never been abandoned. The U.S. registrations for Plaintiff's Trademarks are valid, subsisting, and in full force and effect. *See id.* ¶ 18 and D.I. 1-1.

Plaintiff's Trademarks perform an important source-identifying function for Plaintiff's electronic nicotine vaporizer devices and pod products, signifying to purchasers that the products come from Plaintiff and are manufactured according to Plaintiff's high-quality standards. Amended Complaint ¶ 19. Plaintiff's Trademarks are inherently distinctive, and have acquired

considerable brand loyalty through Plaintiff's sales, including from direct word-of-mouth promotion by consumers. *Id.* Indeed, according to a recent article from CNBC, Plaintiff is "dominating the [e-cigarette] industry."[1] In addition, Plaintiff has expended significant effort in developing their Trademarks in the United States. The market reputation and consumer goodwill associated with Plaintiff's Trademarks are of incalculable and inestimable value to Plaintiff. Amended Complaint ¶ 19.

### B.      Defendants

Defendants are individuals and business entities who, upon information and belief, reside in China, and elsewhere outside the United States. Amended Complaint ¶ 20. Defendants conduct business throughout the United States, including within the State of Virginia and this Judicial District, through the operation of online marketplaces, such as eBay. *Id.* Each Defendant targets the United States, including Virginia, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit Juul pods (the "Counterfeit Juul Pods") to consumers within the United States, including the State of Virginia and this District. *Id.*

On information and belief, Defendants knowingly and willfully manufacture, import, distribute, offer for sale, and sell products using counterfeit versions of Plaintiff's Trademarks in the same transaction, occurrence, or series of transactions or occurrences. *Id.* ¶ 80. Defendants each use similar or the same pictures and descriptions of the JUUL Pods in their Online Marketplaces. Tactics used by Defendants to conceal their identities and the full scope of their

---

[1] Angelica LaVito, CNBC.com, *E-cigarette sales are booming thanks to Juul* (Aug. 21, 2018), https://www.cnbc.com/2018/08/21/e-cigarette-sales-are-booming-thanks-to-juul.html (last accessed Nov. 12, 2019).

counterfeiting operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their counterfeit network. *Id.*

Subject Defendants operate Defendant Internet Stores under various pseudonyms and usernames, as listed below.[2]

| No. | Defendant Name | Seller ID/ Defendant Store | Defendant Email |
|---|---|---|---|
| 2 | Greg Hillhouse | ghilly001 | doubleh911@hotmail.com |
| 3 | Panteley Nikolov | pant-20 | pantelein@gmail.com |
| 4 | 敏 张 (Min Zhang) | qiaotianping-zhengmeixinxi | qtp_misszhang@outlook.com shiyan0227@outlook.com qtp_misszhang@hotmail.com |
| 5 | | miss_zhang | |
| 7 | Wenjiang Mai | vapingpit | maiwenjiang@hotmail.com misszhanglink2mwj@outlook.com qtplink2mwj@outlook.com |
| 8 | 东东 王(Dong Dong Wang) | savings4u168 | wangpaul668@gmail.com |
| 10 | Mark Derias | lulucaty5171 | markd@adventresources.com marksafwat@hotmail.com mderias@scottrobinson.com marksafwat@yahoo.com |
| 38 | | 2015.filta | |
| 12 | Antonio Cressotti | a.cressotti69 | a.Cressotti88@gmail.com |
| 15 | 莲翠 蒋 (Lian Cui Jiang) | kytech2016_0 | kytech2016@163.com |
| 16 | 小华 汪 (Xiao Hua Wang) | szeminhhangy | wangxiaohua588@outlook.com |
| 17 | Roy Walker | sodal-87 | sodalohapo@gmail.com |
| 18 | Yervand Setoyan | yervansetoya | yervandsetoyan@icloud.com |
| 20 | | yervansetoya-0 | |
| 21 | Antonio Cressotti | cress.anton | xxweasel102xx@gmail.com |
| 22 | 小华 汪 (Xiao Hua Wang) | tyijiafkju | xiaohuawang588@outlook.com |
| 23 | Eman Ghaly | zbest4less2012 | sawaf75@yahoo.com |
| 24 | 海艳 项 (Hai Yan Xiang) | red-cherry2018 | cherry-xiang@outlook.com |

[2] Plaintiff is only seeking the entry of default against Defendants with whom Plaintiff has not reached a settlement. Plaintiff has reached a satisfactory settlement with the other named Defendants.

| No. | Defendant Name | Seller ID/ Defendant Store | Defendant Email |
|---|---|---|---|
| 25 | Jordan Horst | jdonymous | jordanhorst29@gmail.com |
| 26 | Myron Doyle | myrodoyl0 | pipelinerintexas@gmail.com |
| 27 | Benz Tran | betr-2 | deezdeezllc@gmail.com |
| 30 | Duy Tran | ageless911 | versace1910@yahoo.com |
| 31 | Angelene Quimbaya | quimstores_914 | angquimbaya27@gmail.com |
| 33 | 鹏 林 (Peng Lin) | talfangkoyu | penglin188@outlook.com |
| 34 | Ivan Zambarov | ivanbgatlanta | zambarovivan@gmail.com |
| 36 | Nikolay Zanbarov | nikobg1973 | zmbrv@yahoo.com |
| 39 | Mervat Aboulayla | jafra1571 | jamesfranco12h@gmail.com |
| 40 | Noah Martano | noamartan_0 | noahlasalle33@gmail.com |
| 42 | Josif Leitner | golit_34 | yossileit@gmail.com |
| 43 | Harlen Nappi | harna_1763 | harlennappi@gmail.com |
| 51 | Christy Vasquez | joose-6877 | cvasquez727@hotmail.com |
| 53 | 辉棋 林 (Hui Qi Lin) | wanyancai559 | linhq888@hotmail.com |
| 54 | Wenbo Lei | wenwen996_4 | wenwen996@aliyun.com |
| 55 | Marcio Diaz | lostandfoundnyc | liljuulpod@outlook.com MarcioADiaz@outlook.com misterjuul1@gmail.com |
| 59 | Nidal Hamayel | nidahamaye-0 | nidal20095111@gmail.com |
| 60 | Imad Rihan | emadors15 | emadors@yahoo.com |
| 63 | Frederick Roesel | hfbnvt_76 | hfbnvtvjj7824@gmail.com |
| 68 | 小华 汪 (Xiao Hua Wang) | yanshifu482 | wxhua188@outlook.com |
| 70 | Dario Vasquez | vasmi | Vasmi72@gmail.com |
| 72 | Jordan Mcleod | bigapplewares | kirby8456@gmail.com |
| 74 | Kyle Patterson | richpattersonkyle | cheapviralmoney@gmail.com kylepatt02@gmail.com wholesalejuulvendor@gmail.com cassandrainlove1985@yahoo.com kmakincash@aim.com Sandrainlove1985@yahoo.com |

## C.    Nature of the Suit

Plaintiff filed this action on May 9, 2019 against the Unincorporated Associations Identified in Schedule A of its Complaint. *See* D.I. 1. The Complaint seeks permanent injunctions and damages related to the unauthorized use of the Plaintiff's Trademarks including

damages related to false designation of origin, trademark infringement and counterfeiting, and trademark dilution. *Id.*

Plaintiff filed a Motion for Order Authorizing Service of Process by Email on June 21, 2019, which this Court granted on June 24, 2019. *See* D.I. 50, 58. Plaintiff complied with the Court's Order and served the certain foreign-based Defendants by email on July 8, 2019. *See* D.I. 110. Plaintiff also initiated personal service on the Defendants located within the United States on June 25, 2019 and filed proof of service affidavits as required by Fed. R. Civ. P. 4(l)(1) on October 21, 2019. *See* D.I. 77-108.

On December 9, 2019, the Clerk entered default against the Defendants. *See* D.I. 130.

## III.   Argument

### A.   This Court has Jurisdiction to Enter Default Judgment Against Defendants

This Court has jurisdiction to grant Plaintiff's motion and enter default judgment against Subject Defendants because the Court has subject matter jurisdiction over this action as well as personal jurisdiction over Subject Defendants. The Court has subject matter jurisdiction over this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b), 28 U.S.C. § 1331, and 28 U.S.C. §1121. *See* Amended Complaint ¶ 10.

This Court has personal jurisdiction over Subject Defendants because of their substantial contacts with the Eastern District of Virginia as well as directly targeting the District in their counterfeit operations. Further, Subject Defendants sold products in this District, establishing personal jurisdiction over them. *See id.* ¶ 12.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Virginia and this District, through at least the Online Marketplace Accounts/Internet Stores identified in Schedule A.

7

Specifically, Defendants are seeking to do business with this District's residents by operating one or more commercial Defendant Internet Stores through which Virginia residents can purchase counterfeit products using versions of Plaintiff's Trademarks. Each of the Defendants has targeted sales to Virginia residents by operating online stores that offer shipping to the United States, including Virginia and this District, and accept payment in U.S. dollars. Plaintiff confirmed that Defendants ship their Counterfeit Juul Pods to this District by purchasing goods from each of the Defendants' Internet Stores, which the Defendants shipped into this District. *See id*.

Personal jurisdiction may be established either by specific or general jurisdiction, but specific jurisdiction is appropriate in the instant case because of Subject Defendants' contact with the forum. *See ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). The factors to consider when establishing specific jurisdiction are: "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Id*. Subject Defendants satisfy each of the factors to establish specific personal jurisdiction.

First, Subject Defendants purposefully availed themselves of the privilege of conducting business in Virginia, and this District. Subject Defendants purposefully targeted the sales of Counterfeit Juul Pods to the Eastern District of Virginia, offered to sell counterfeit products to Virginia residents, and did in fact sell counterfeit products to entities in Virginia. *See* Amended

Complaint ¶ 12. These actions are sufficient to establish jurisdiction over Defendants. *See* VA Code § 8.01-328.1(B).[3]

Second, Plaintiff's claims arise directly from actions that occurred in this district. Plaintiff purchased counterfeit products to determine their authenticity and had the counterfeit goods shipped to Virginia. *See* Amended Complaint ¶¶ 85-86. These unauthorized and unlicensed sales of counterfeit and infringing products in this District establish this Court's jurisdiction over Subject Defendants.

Lastly, this Court's exercise of specific personal jurisdiction over Subject Defendants is "reasonable" under the constitution. Courts look at the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, "the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

The record in this case does not suggest that the burden of litigation in this District is extraordinary. Subject Defendants offered to ship and sell their products to any part of the United States. *See* Amended Complaint ¶ 12. Virginia and this Court have a "valid interest in the resolution of the grievances of its citizens and businesses, particularly when they potentially involve issues of Virginia law." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 297 (4th Cir. 2009). And Plaintiff has a "valid and substantial interest in having its legal

---

[3] The Fourth Circuit explained that its decisions in *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003) and *Christian Sci. Board of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209 (4th Cir. 2001) did not establish a *de minimis* test for contacts between an out-of-state defendant and a web server. *See United States v. Batato*, 833 F.3d 413, 424 (4th Cir. 2016).

rights recognized and vindicated." *Id.* Therefore, this Court's exercise of specific personal jurisdiction over Subject Defendants is constitutionally reasonable.

### B.    Joinder of the Defendants is Appropriate

Joinder of the Defendants is proper when Plaintiffs seek relief "jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence or series of transactions or occurrences;" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). A "series" of transactions or occurrences, means some connection or nucleus of operative facts or law. *See Hanley v. First Inv'rs Corp.*, 151 F.R.D. 76 (E.D. Tex. 1993); *see also Dig. Sin, Inc. v. Does 1-176*, 279 F.R.D. 239 (S.D.N.Y. 2012).

The Subject Defendants are properly joined in this case. Plaintiff alleged in the Verified Complaint and the Amended Complaint that Defendants were working in a conspiracy together: Defendants knowingly and willfully manufacture, import, distribute, offer for sale, and sell counterfeit products using versions of JLI's Trademarks in the same transaction, occurrence, or series of transactions or occurrences. Amended Complaint ¶ 80. And in the case of a default judgment, the well-pleaded allegations of a complaint are taken as true. *See Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.,* 722 F.2d 1319, 1323 (7th Cir. 1983).

Had Subject Defendants answered the Amended Complaint, Plaintiff would have been entitled to discovery to prove the allegations recited in the Amended Complaint, including that Defendants were properly joined here. But even without such discovery, there are numerous indications, also alleged in the Complaint and the Amended Complaint, that Defendants are working together. All of the Subject Defendants operate nearly identical Internet stores that offer for sale and sell Counterfeit Juul Pods. *See* Amended Complaint ¶ 87, 95. Defendants generally utilize the same or similar images of the infringing products in their listings offering for sale the

Counterfeit Juul Pods. *See* D.I. 8. The Subject Defendants also advertise nearly identical infringing products on their store's websites, using identical language. *See id.* These facts, when considered as a whole, show that Defendants have engaged in a series of transactions with a connection of common operative facts that, Plaintiff submit, meet the joinder requirement of Rule 20.

Joinder of the Subject Defendants is also proper because there are common questions of law with regard to Plaintiff's Amended Complaint as it relates to each Subject Defendant. Plaintiff filed this case alleging the same cause of action against all of the Subject Defendants. *See generally* Amended Complaint. Plaintiff contends that the same operative law, the Lanham Act, applies to all of the Subject Defendants. *See id.* ¶¶ 95-117. The allegations against each Subject Defendant are the same and require the same legal analysis. *See id.* Each claim, now admitted by virtue of the Subject Defendants' default, may be analyzed against all of the Subject Defendants as a single unit. That is, no individual Defendant is harmed by analyzing the Subject Defendants as a whole.

### C.   The Clerk Properly Entered Default Judgment Against Defendants

The Clerk of this Court enters a default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). The Clerk entered default judgment against Subject Defendants because, as the docket reflects, the time for filing a responsive pleading expired.

On June 21, 2019, Plaintiff filed a Motion for Order Authorizing Service of Process by Email, which this Court granted on June 24, 2019. *See* D.I. 50, 58. Plaintiff subsequently complied with the Court's Order and served the certain foreign-based Defendants by email on July 8, 2019. *See* D.I. 110. Plaintiff also initiated personal service on the Defendants located

11

within the United States on June 25, 2019 and filed proof of service affidavits as required by Fed. R. Civ. P. 4(l)(1) on October 21, 2019. *See* D.I. 77-108.

The facts, supported by uncontroverted declarations and the Verified Complaint filed in this case, demonstrate that Subject Defendants had both constructive and actual notice of this suit, yet failed to enter an appearance or otherwise defend this action. Therefore, the Clerk appropriately entered default judgment against the named Defendants in this action pursuant to Fed. R. Civ. P. 55.

### D.    Plaintiff is Entitled to a Default Judgment Against Defendants

By failing to appear, or otherwise defend against the First Amended Verified Complaint, Subject Defendants are deemed to have admitted every allegation therein, and the Court must only determine whether Plaintiff's Complaint properly states a claim for relief. *See Anderson v. Found. for Advancement, Educ. and Emp't of Am. Indians*, 155 F.3d 500, 505 (4th Cir. 1998); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003). Pursuant to Fed. R. Civ. P. 55(a) and (b)(2), Plaintiff now moves this Court for an Order entering default and default judgment finding that Subject Defendants are liable on all counts of Plaintiff's Complaint. Fed. R. Civ. P. 55(a) and (b)(2).

### 1.    Defendants' Trademark Infringement, Counterfeiting, and False Designation of Origin (Counts I and II)

The uncontested allegations contained in the Complaint establish Subject Defendants' liability for trademark infringement and counterfeiting. A party is liable for trademark counterfeiting if, without consent of the registrant, that party "reproduce[s], counterfeit[s], cop[ies], or colorably imitate[s] a registered mark and appl[ies] such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for

sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(b). A party is liable for false designation of origin if the use of the mark "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A).

To prove trademark infringement, Plaintiff must show: "(1) that it owns a valid and protectable mark; (2) that [Defendants] use[] a re-production, counterfeit, copy, or colorable imitation of that mark in commerce and without [Plaintiff]'s consent; and (3) that [Defendants'] use is likely to cause confusion." *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 259 (4th Cir. 2007) (internal quotations omitted).[4] This Court must determine if Subject Defendants' use of Plaintiff's Trademarks will create a likelihood of confusion. *See id.*

The Fourth Circuit established a list of seven non-exclusive factors to consider when determining if a product creates a likelihood of confusion: "(1) the strength or distinctiveness of the mark; (2) the similarity of the two marks; (3) the similarity of the goods/services the marks identify; (4) the similarity of the facilities the two parties use in their businesses; (5) the similarity of the advertising used by the two parties; (6) the defendant's intent; and (7) actual confusion." *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984). These factors are not always relevant or equally emphasized in each case. *See id.*[5]

---

[4] The validity and protectability of Plaintiff's marks are not at issue in this case, nor is the fact that Defendants use "colorable imitations" of Plaintiff's marks. Under *Haute Diggity Dog*, this Court need not consider those factors. *See* 507 F.3d at 259.

[5] On information and belief, Subject Defendants do not use similar facilities or advertising for their products. Therefore Plaintiff will not consider *Pizzeria Uno* factors four and five for the purpose of this Motion.

First, Plaintiff's Trademarks are inherently distinctive and famous. Plaintiff's Trademarks perform an important source-identifying function for Plaintiff's electronic nicotine vaporizer devices and pod products, signifying to purchasers that the products come from Plaintiff and are manufactured according to Plaintiff's high-quality standards. Plaintiff's Trademarks are inherently distinctive, and have acquired considerable brand loyalty through Plaintiff's sales, including from direct word-of-mouth promotion by consumers. *See* Amended Complaint ¶ 19. Plaintiff also takes numerous steps to enforce their trademark rights, such as the instant action. *See id.* ¶ 7. The balance weighs heavily in favor of the Plaintiff with respect to *Pizzeria Uno* factor one.

Second, Subject Defendants create exact replicas of Plaintiff's distinctive marks to sell the Counterfeit Juul Pods. *See id.* ¶ 87. These marks are intended to confuse the consumer. Thus, *Pizzeria Uno* factor two also weighs in favor of Plaintiff.

Third, Subject Defendants' products are marketed as genuine JUUL Pods. Consumers often buy these pods instead of genuine JUUL Pods under the false impression that they are either a legitimate JUUL System product, or are somehow authorized by or affiliated with JLI. *See id.* ¶ 6. Thus, *Pizzeria Uno* factor three weighs in favor of Plaintiff.

Fourth, on information and belief, the Subject Defendants' intent is to profit from the sale of Counterfeit Juul Pods by purchasing the counterfeit goods cheaply and then selling them at a price significantly cheaper than genuine pods in order to maximize profit. *See id.* ¶¶ 82-88. Moreover, Subject Defendants are selling these products by the thousands on Internet marketplaces, such as eBay. The only reasonable conclusion is that they are engaging in these activities to make a profit by undercutting the price of genuine pods. Further, on information and belief, Subject Defendants are making a profit by utilizing the goodwill imbued within Plaintiff's

distinctive Trademarks. In fact, Subject Defendants explicitly suggest that these pods are original and unused genuine pods. *See* D.I. 8. Thus, *Pizzeria Uno* factor six weighs in favor of Plaintiff.

Finally, there is substantial evidence of actual consumer confusion as to the origin of Subject Defendants' counterfeit Pods. As previously noted, Subject Defendants create exact replicas of Plaintiff's distinctive marks to sell the Counterfeit Juul Pods. *See* Amended Complaint ¶ 87. There can be no doubt that these marks are intended to confuse the consumer. Moreover, the number and quantity of Subject Defendants' eBay auctions sales indicate that consumers mistakenly believe they are purchasing genuine JUUL Pods. *See* D.I. 8. Consumer confusion as to the origin of the products shows that *Pizzeria Uno* factor seven weighs in favor of Plaintiff.

For the foregoing reasons, Plaintiff is entitled to monetary relief and a permanent injunction against Defendants.

### 2.      Defendants' Trademark Dilution (Count III)

Defendants' actions of advertising and selling Counterfeit Juul Pods dilutes and tarnishes Plaintiff's marks. To establish dilution by tarnishment, this Court must determine whether the "similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(C). As discussed above, Defendants use exact replicas of Plaintiff's famous Trademarks to sell their counterfeit products, but use lower quality materials when producing the counterfeit goods. The goal of trademark law is to inform the consumer of the quality of good they should expect to receive from a seller. *See generally Qualitex Co. v. Jacobson Prods. Co.*, 115 S.Ct. 1300 (1995). Here, there is no question that Defendants' actions of selling cheap, low-quality counterfeit products tarnishes Plaintiff's marks. Defendants' actions directly violate Plaintiff's trademark rights under § 1125 of the Lanham Act.

For the foregoing reasons, Plaintiff is entitled to an injunction against Defendants.

### 3.      Plaintiff is Entitled to Statutory Damages

The Lanham Act provides that the Plaintiff may elect at any time to recover statutory damages "if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117 (c)(2). Subject Defendants purposefully infringe Plaintiff's marks for profit. *See* Amended Complaint ¶¶ 82-88. The undisputed facts of this case show that Subject Defendants' actions must be willful use of a counterfeit mark under the meaning of the Lanham Act.[6] Because Subject Defendants willfully use Plaintiff's marks to sell counterfeit goods, Plaintiff is entitled to statutory damages of $2,000,000 per mark infringed. Statutory damages would thereby equate to at least $4,000,000 per Subject Defendant, who each infringed Plaintiff's federally registered design mark in combination with at least one of Plaintiff's word marks, as shown below, by their sale of the Counterfeit Juul Pods:

| Reg. No. | Mark | Reg. Date | First Use in Commerce | Goods |
|---|---|---|---|---|
| 4818664 | JUUL | Sept. 22, 2015 | June 1, 2015 | Class 1: Nicotine-based liquid, namely, liquid nicotine used to refill electronic cigarettes; cartridges sold filled with liquid nicotine for electronic cigarettes. Class 30: Electronic cigarette refill liquids, namely, chemical flavorings in liquid form used to refill electronic cigarettes; cartridges sold filled with chemical flavorings in liquid form for electronic cigarettes. |

---

[6] The Lanham Act defines a counterfeit of a mark as relating to a mark "registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered." 15 U.S.C. § 1116 (d)(1)(B)(i).

| Reg. No. | Mark | Reg. Date | First Use in Commerce | Goods |
|---|---|---|---|---|
| | | | | Class 34: Electronic cigarettes; electronic smoking vaporizers, namely, electronic cigarettes; tobacco substitutes in liquid solution form other than for medical purposes for electronic cigarettes. |
| 4898257 | JUUL | Feb. 9, 2016 | June 1, 2015 | Class 34: nicotine-based liquid, namely, liquid nicotine used to refill electronic cigarettes; cartridges sold filled with liquid nicotine for electronic cigarettes; electronic cigarette refill liquids, namely, chemical flavorings in liquid form used to refill electronic cigarettes; cartridges sold filled with chemical flavorings in liquid form for electronic cigarettes; electronic cigarettes; electronic smoking vaporizers, namely, electronic cigarettes; tobacco substitutes in liquid solution form other than for medical purposes for electronic cigarettes. |
| 5304697 |  The mark is two-dimensional and consists of a vertical rectangle with an elongated hexagon shape inside the rectangle with the hexagon located at approximately the center of the rectangle. | Oct. 10, 2017 | Mar. 28, 2016 | Class 34: Nicotine-based liquid, namely, liquid nicotine used to refill electronic cigarettes; cartridges sold filled with liquid nicotine for electronic cigarettes; electronic cigarette refill liquids, namely, chemical flavorings in liquid form used to refill electronic cigarettes; cartridges sold filled with chemical flavorings in liquid form for electronic cigarettes; electronic cigarettes; electronic smoking vaporizers, namely, electronic cigarettes; tobacco substitutes in liquid solution form other than for medical purposes for electronic cigarettes. |

17

*See id.* ¶ 17.

Subject Defendants actions of counterfeiting and treading on Plaintiff's marks warrant a severe deterrent. This Court has awarded a trademark holder with the maximum statutory damages where the defendant's actions were "clearly willful" and the maximum damages were necessary to "deter similar actors in the future." *See Graduate Mgmt. Admission Counsel v. Raju*, 267 F. Supp. 2d 505 (E.D. Va. 2003). This case, like *Raju*, warrants the full force of the law and Plaintiff respectfully requests a statutory damages award of $2,000,000 for each mark infringed (at least one word mark and the design mark), for a total of $4,000,000 per defendant. Plaintiff requests this amount as part of their ongoing efforts to combat trademark infringement and to deter other individuals or corporations from infringing Plaintiff's valuable marks.

### 4. Plaintiff is Entitled to Permanent Injunctive Relief

In addition to the foregoing relief, Plaintiff respectfully requests entry of a permanent injunction enjoining Subject Defendants from infringing or otherwise violating Plaintiff's registered trademark rights in the Plaintiff's Trademarks, including at least all injunctive relief previously awarded by this Court to Plaintiff in the temporary restraining order and preliminary injunction. Plaintiff is also entitled to injunctive relief so they can take prompt action against any new online marketplace accounts or websites that are identified, found to be linking to Subject Defendants, and selling Counterfeit Juul Pods. A plaintiff is entitled to a permanent injunction for infringement of a trademark right pursuant to 15 U.S.C. § 1116(a). *See Microsoft Corp. v. Does 1-2*, 1:16-cv-00993-GBL-TCB, at *3 [D.I. No. 59] (Aug. 1, 2017); *Teaching Co. P'ship v. Unapix Entm't, Inc.*, 87 F. Supp. 2d 567, 587 (E.D. Va. 2000).

A permanent injunction, like the statutory damages, would help deter other individuals or corporations from infringing Plaintiff's valuable marks. Additionally, entry of a permanent injunction against Subject Defendants in this case will help expedite any future litigations

between the defaulting Defendants and Plaintiff, if a case between the parties arises in the future. This equitable result would be in the interest of justice and provide Plaintiff with more flexibility to protect their intellectual property rights.

        **5.**    **Plaintiff Requests that this Court Order the Transfer to Them of Remaining Assets in Defaulting Defendants' PayPal Accounts**

Plaintiff filed for a temporary restraining order and preliminary injunction to prevent Defendants from transferring the funds held in their PayPal accounts beyond this Court's jurisdiction. *See* D.I. 10, 47. This Court granted the temporary restraining order and preliminary injunction, preventing Defendants from accessing the funds in their PayPal accounts. *See* D.I. 24, 62. This Court found that Plaintiff had established a likelihood of success on the merits and irreparable harm in the absence of a temporary restraining order and preliminary injunction. *See id.*

Plaintiff now respectfully requests that, in the event this Court grants Plaintiff's Motion for Default against the Defendants, this Court order PayPal, Inc. to transfer to Plaintiff the assets currently held in the defaulting Defendants' PayPal accounts in partial payment of any award of damages. In the absence of such an order, it is likely that Plaintiff will be left without any effective means by which to collect from Defendants any monetary judgment entered by this Court. As explained previously, Defendants and any assets they own, other than those held in their respective PayPal accounts, are presumably located in China. There is no bilateral treaty or multilateral convention in force between the United States and any other country on reciprocal recognition and enforcement of judgments. Moreover, as explained in some detail previously, Defendants are involved in illegal counterfeiting operations and go to great lengths to conceal their identities and whereabouts. As a result, even in the unlikely event that Plaintiff could enforce a U.S. judgment in the Chinese courts, it will be virtually impossible to locate

Defendants or any assets they may hold in order to satisfy any monetary damages awarded in this case.

Such orders are routinely entered by other Courts to satisfy monetary judgment awards in similar counterfeiting cases. *See*, *e.g.*, *Eye Safety Sys., Inc. v. The Partnerships and Unincorporated Ass'ns Identified in Schedule "A"*, Case No. ILND-1:18-cv-00034 [D.I. 41 (Mar. 1, 2018)] (ordering PayPal to transfer defendants' funds to plaintiffs as partial satisfaction of judgment); *see also Spin Master Ltd. et al v. The Unincorporated P'ships and Ass'n Identified in Schedule "A"*, Case No. ILND-1:18-cv-01270 [D.I. 39 (Apr. 25, 2018)] (same); *Levi Strauss & Co. v. The Unincorporated P'ships and Ass'ns Identified in Schedule "A"*, Case No. ILND-1:17-cv-04561 [D.I. 33 (Aug. 1, 2017)] (same); *Yeti Coolers, LLC v. Taneil George, et al*, Case No. FLSD-0:17-cv-62215 [D.I. 46 (Mar. 29, 2018)] (same); *Mycoskie, LLC v. csmlong188 et al.*, Case No. FLSD-0:17-cv-60782 [D.I. 43 (Jul. 21, 2017)] (same); *Fendi Adele, S.R.L. v. Alma Hernandez, et al*, Case No. FLSD-0:17-cv-62379 [D.I. 37 (Jan. 29, 2018)] (same); *Burberry Ltd. et al v. The P'ships and Unincorporated Ass'ns Identified On Schedule A*, Case No. ILND-1:17-cv-03255 [D.I. 37 (Jun. 7, 2017)] (same); *Louis Vuitton Malletier, S.A. v. Andrew Henry et al*, Case No. FLSD-0:17-cv-61034 [D.I. 40 (Aug. 22, 2017)] (same); *Cartier Int'l A.G. v. Anatoky et al*, Case No. FLSD-0:17-cv-60831 [D.I. 38 (Jul. 6, 2017)] (same); *Lacoste Alligator S.A. v. 6666 store et al*, Case No. FLSD-0:17-cv-60046 [D.I. 49 (Jun. 28, 2017)] (same); *Gucci Am., Inc. v. 8710 t-shirt shop et al*, Case No. FLSD-0:16-cv-63002 [D.I. 58 (Mar. 27, 2017)] (same); *Louis Vuitton Malletier, S.A. v. afste nxmu et al*, Case No. FLSD-0:17-cv-61819 [D.I. 39 (Dec. 12, 2017, 2017)] (same); *Volkswagen AG, et al v. The Unincorporated Ass'n Identified in Schedule "A"*, Case No. E.D. Va. 1:17-cv-01413 [D.I. 73 (Aug. 30, 2018)] (same).

## IV.     Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its Motion for Default Judgment; enter judgment against Subject Defendants for trademark infringement, false designation of origin, and trademark dilution; permanently enjoin Subject Defendants from infringing Plaintiff's Trademarks; award Plaintiff statutory damages consistent with 15 U.S.C. § 1117(c); and grant such further relief as this Court deems appropriate. Plaintiff additionally requests that this Court dissolve the preliminary injunction currently freezing Defendants assets held by PayPal to permit the transfer of funds to Plaintiff in partial payment of any default judgment entered against Subject Defendants.

Date:  December 16, 2019

Respectfully submitted,

/s/ Monica Riva Talley
Monica Riva Talley (VSB No. 41840)
Byron Pickard (VSB No. 47286)
Dennies Varughese, Pharm.D. (*pro hac vice*)
Nirav N. Desai (VSB. No. 72887)
Nicholas J. Nowak (*pro hac vice*)
Daniel S. Block (*pro hac vice*)
STERNE KESSLER GOLDSTEIN & FOX, PLLC
1100 New York Ave., N.W., Suite 600
Washington, DC 20005-3934
Telephone No.: (202) 371-2600
Facsimile No.: (202) 371-2540
mtalley@sternekessler.com
bpickard@sternekessler.com
dvarughe@sternekessler.com
ndesai@sternekessler.com
nnowak@sternekessler.com
dblock@sternekessler.com

*Attorneys for Plaintiff*